# IN THE SUPREME COURT OF IOWA

No. 13–1333

Filed May 23, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**JOHN MICHAEL CARTER,**

Appellant.

---

Appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

Attorney appeals from the grievance commission's recommendation of revocation. **LICENSE REVOKED.**

Christopher R. Kemp of Kemp & Sease, Des Moines, for appellant.

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for appellee.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged John Michael Carter with several violations of the Iowa Rules of Professional Conduct. The gravamen of these charges is that Carter converted client funds for personal use without a colorable future claim to them. The Board also charged Carter with other violations flowing from the alleged conversions. The Grievance Commission of the Supreme Court of Iowa found Carter converted client funds and had no colorable future claim to them. It recommended Carter's license be revoked. On our review, we find Carter violated the rules of professional conduct by converting client funds and revoke his license.

## I. Background Facts and Prior Proceedings.

John Carter was admitted to practice law in Iowa and Nebraska in 2007. Carter maintained offices in Council Bluffs, Iowa, and Omaha, Nebraska. He practiced as a sole practitioner. Prior to attending law school, he worked as a police officer for seventeen years.

The events that gave rise to this action relate to Carter's representation of clients in three separate cases. In late 2008, Carter was hired by Norma Noland and Clifettia Rose to assist them as the personal representatives of the estate of their mother, Anna Charles. Noland and Rose were also beneficiaries under the will. The decedent was under a conservatorship prior to her death, and Carter had briefly been employed by Noland and Rose to represent them in opposing an action taken by the conservator. However, Anna Charles died a short time after Carter began representing Noland and Rose, and he performed little legal work for them. Carter had entered into a fee arrangement for him to be paid $165 per hour.

On February 20, 2009, the conservator sent a check to Carter in the amount of $7334.61. These funds represented assets of the conservatorship that had become assets of the estate. Carter deposited the check into his office trust account the same day. However, he subsequently withdrew $6300 of the funds from the account. He withdrew $1800 on March 17, 2009, and $4500 on April 3, 2009. The withdrawal of these funds served as a basis for part of the disciplinary complaint brought against Carter by the Board.

In another case, Carter represented Rodney and Barbara Eastridge. He received a check from an insurance company in the amount of $52,766.46, which represented proceeds from an insurance claim by the Eastridges. Carter deposited the funds into his office trust account, but later withdrew $17,600 of the funds and placed them into his business account. He subsequently used a portion of these funds for his personal benefit.

In a third matter, Carter represented Shirley Suber in various legal problems encountered by Suber. Eventually, Carter sought and obtained a loan from Suber for $60,000. Suber acquired the loan proceeds by withdrawing the funds from her retirement account. She paid taxes and a penalty as a result of the transaction. Carter told Suber his law license was in jeopardy, and he desperately needed the money. The loan was not reduced to writing, and Carter did not advise Suber to seek independent counsel and did not obtain informed consent prior to the transaction. Once Carter obtained the loan proceeds, he promptly sent Noland and Rose checks for $3300.

Suber was later forced to file bankruptcy, which she did in Maryland. During the bankruptcy proceedings, Carter initially

acknowledged the loan, but later claimed the funds were in payment of legal fees he had earned from representing Suber.

In 2011, the Nebraska Supreme Court revoked Carter's license to practice law in Nebraska. *State ex rel. Counsel for Discipline of the Neb. Supreme Ct. v. Carter*, 808 N.W.2d 342, 352 (Neb. 2011) (per curiam). The proceedings were primarily confined to the Anna Charles estate matter. The Supreme Court agreed with the court-appointed referee, which concluded:

> The conclusion is inescapable that [Carter] paid himself fees before they were earned, attempted to conceal the withdrawal by repaying the money and characterizing it as a "distribution" from the estate, and, when that ruse failed, created after-the-fact billing statements to make it appear he had fully earned the money before it was withdrawn. From April 2009 until December 2009, the $6,300.00 was in [Carter's] possession or converted to his personal use and unaccounted for.

*Id.* at 347, 349.

The Board eventually filed a multiple-count indictment against Carter, which it subsequently amended to include more counts. With respect to the Anna Charles estate, the Board charged Carter with violating Iowa Rules of Professional Conduct 32:1.15(a) and 32:8.4(c), as well as their Nebraska counterparts, Nebraska Court Rules of Professional Conduct 3-501.15(a) and 3-508.4(c). With respect to the Eastridge matter, the Board charged Carter with violating Iowa Rules of Professional Conduct 32:1.15(b), 32:8.4(b), 32:8.4(c), 32:8.4(d), as well as their Nebraska counterparts, Nebraska Court Rules of Professional Conduct 3-501.15(b), 3-508.4(b), 3-508.4(c), and 3-508.4(d). With respect to Carter's financial transactions with Shirley Suber, the Board charged Carter with violating Iowa Rules of Professional Conduct 32:1.8(a) and 32:1.8(b), as well as their Maryland counterparts, Maryland

Rules of Professional Conduct 1.8(a) and 1.8(b). With respect to Carter's interaction with Suber's bankruptcy attorney during her bankruptcy proceeding, the Board also charged Carter with violating Iowa Rules of Professional Conduct 32:4.1(a) and 32:8.4(d), as well as their Maryland counterparts, Maryland Rules of Professional Conduct 4.1(a) and 8.4(d). Finally, the Board alleged Carter made false statements in the 2012 reciprocal discipline proceeding and accordingly charged Carter with violating Iowa Rules of Professional Conduct 32:8.4(b) and 32:8.4(c).

At the hearing on the complaint, Carter claimed the funds he withdrew from his trust account in March and April of 2009 were to pay his fee for legal services performed in connection with the Anna Charles matter. He further claimed the supporting fee documentation was not available to verify the amount of his fee because it was lost when a computer program malfunctioned. Yet, Carter offered a different account in response to the Nebraska proceedings. When he first responded to the counsel for discipline in Nebraska, he did not assert any entitlement to the funds as payment for legal services. Instead, he said he intended to distribute the trust account funds to Noland and Rose in the near future. Carter told a third story to the Iowa trust account auditor to explain the withdrawal of the funds from the trust account. He told the auditor that the funds were taken from his trust account because Noland used them to pay him for his legal services in periodic increments of approximately $200.

Following the hearing, the commission found Carter violated Iowa Rules of Professional Conduct 32:1.8(a) (entering a business transaction with a client without obtaining informed consent), 32:1.8(b) (using information relating to representation to the disadvantage of the client), 32:1.15(a) (misappropriating property), 32:1.15(b) (commingling lawyer

and client funds), 32:4.1(a) (making a false statement of material fact to a third person), 32:8.4(a) (violating or attempting to violate the Iowa Rules of Professional Conduct), 32:8.4(b) (committing a criminal act reflecting adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer), 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 32:8.4(d) (engaging in conduct prejudicial to the administration of justice). In particular, it found Carter converted the Anna Charles funds from his trust account without a colorable claim. It recommended that his license to practice law be revoked.

## II. Scope of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lemanski*, 841 N.W.2d 131, 133 (Iowa 2013). "We give the commission's findings respectful consideration, but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 434 (Iowa 2012).

## III. Ethical Violations.

We agree with the commission that Carter violated the rules of professional conduct identified by the commission. In particular, we find Carter did not have a colorable future claim to the Anna Charles funds in the trust account to avoid a finding of misappropriation of client funds. This finding is critical to the outcome of this proceeding and makes it unnecessary for us to discuss the other violations in detail.

The professional standards pertaining to the protection of client funds "are well known and . . . long-standing." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004). Misappropriation or conversion of client funds results in revocation, except in instances in which the attorney had a colorable future claim to the funds or did not take the funds for personal use. *Id.* In those

instances in which the attorney has a colorable future claim to the funds, the violation only pertains to the failure to follow the various requirements for the safekeeping of client funds. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 830 N.W.2d 355, 357, 359–60 (Iowa 2013) (suspending lawyer's license for improper depositing of advance fees in office operating account instead of client trust account); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey,* 761 N.W.2d 53, 61 (Iowa 2009) (suspending lawyer's license for taking the second half of an estate fee before receiving court approval under Iowa Court Rule 7.2(4)).

In this case, Carter uses the colorable-claim defense to argue that he merely took fees in violation of the trust fund accounting and notification requirements. *See* Iowa R. Prof'l Conduct 32:1.15. This claim requires us to first consider the burden of proof in cases in which an attorney is accused of conversion of client funds. It is well-known that the Board bears the burden of proving all violations by " 'a convincing preponderance of the evidence.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad,* 723 N.W.2d 791, 792 (Iowa 2006) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004)). The question here is whether the burden shifts in any way for the attorney to prove a colorable future claim.

In civil proceedings, shifting burdens of proof and production are common. *See, e.g., Vaughan v. Must, Inc.,* 542 N.W.2d 533, 538 (Iowa 1996) (describing the so-called *McDonnell Douglas* burden-shifting framework common to employment discrimination litigation). Furthermore, a defendant normally bears the burden of proof on an affirmative defense in a civil matter. *See, e.g., Armstrong v. City of Des Moines,* 232 Iowa 711, 715, 6 N.W.2d 287, 289 (1942) ("The plea of the statute of limitations is an affirmative defense and the burden of

proof is upon the pleader."). In contrast, the burden of proof in criminal proceedings generally does not require a defendant to prove an affirmative defense; instead, an affirmative defense asserted by a defendant "places the burden of going forward with evidence, or production, on the defendant, but leaves the burden of persuasion on the prosecution." *State v. Wilt*, 333 N.W.2d 457, 462 (Iowa 1983); *accord State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982) (describing the difference between an element of a criminal offense and an affirmative defense offered by the defendant).

The burden applicable to professional misconduct proceedings is neither proof beyond a reasonable doubt nor a preponderance of the evidence. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 505 (Iowa 2011) ("Although this burden is less demanding than proof beyond a reasonable doubt, it requires a greater showing than the preponderance-of-the-evidence standard."). Considering the elevated burden of proof appertaining to professional misconduct proceedings and the prosecutorial nature of the proceedings, the framework applicable to criminal proceedings should apply to disciplinary proceedings. Thus, an attorney in a disciplinary proceeding bears the burden of coming forward with evidence of a colorable future claim, but the burden to prove conversion remains with the Board.

We next consider the concept of a colorable future claim to client funds. The phrase first surfaced in *Anderson, see* 687 N.W.2d at 590, but it was a concept we have recognized for a much longer period of time, *see Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen*, 586 N.W.2d 383, 385, 390 (Iowa 1998) (suspending the law license of a lawyer who took fees from a conservatorship without first obtaining court approval); *Comm. on Prof'l Ethics & Conduct v. Jackson*, 492 N.W.2d 430, 433, 435

(Iowa 1992) (suspending the law license of a lawyer who took fees before obtaining court approval required by probate rule); *Comm. on Prof'l Ethics & Conduct v. Rauch*, 486 N.W.2d 39, 40 (Iowa 1992) (per curiam) (suspending law license of a lawyer who took a fee in a conservatorship without first obtaining court approval). While any form of conversion of client funds violates our rules of professional conduct, the colorable-future-claim defense exists to distinguish "for purposes of sanctions between conduct involving trust fund violations and conduct in the nature of stealing." *Powell*, 830 N.W.2d at 359. Thus, the defense generally permits an attorney to avoid revocation of a license to practice law when client funds are converted for payment of attorney fees before the fees have been earned or approved. *See id.* at 357, 359 (involving circumstances in which an attorney paid himself fees from client funds before the fees were earned); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006) (involving circumstances in which an attorney converted a fee retainer into payment of fees prior to earning the fees); *Allen*, 586 N.W.2d at 384–86 (involving circumstances in which an attorney for a conservatorship took fees prior to court approval).

In examining the evidence in the Anna Charles matter, we are confronted with numerous inconsistent positions by Carter, as well as conduct blatantly contrary to basic standards of the practice of law. These circumstances significantly undermine the veracity of his eventual defense that his conduct did not amount to conversion of client funds.

Moreover, Carter uses the colorable-claim defense to cover circumstances it was not intended to cover. He argues he performed legal services for the executors in the Anna Charles matter that entitled him to a fee. He also claims the loss of his billing records prevented him

from showing the amount of the fee he earned, but asserts there was no evidence offered by the Board to show he did not do any work to earn the amounts he withdrew from the trust account.

The contours of a colorable future claim have not been sharply drawn, but a few observations pertinent to this case can be distilled from our prior cases. A colorable-future-claim defense to revocation of a license to practice law as a sanction for conversion of client funds broadly applies to the premature conversion of client funds intended as attorney fees, as opposed to the conversion of client funds with no future claim of right to the funds. *See Powell*, 830 N.W.2d at 358–59 (addressing the broad distinction recognized by a colorable future claim); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 708 N.W.2d 82, 84–85 (Iowa 2006) (same). Yet, a colorable-future-claim defense may also involve the premature taking of a fee by an attorney in an amount greater than the actual fee ultimately earned. We have generally been more willing to allow the colorable future claim to continue to shield an attorney from revocation when the premature fee claim exceeds the actual fee earned if the funds converted were retainer funds. *See Boles*, 808 N.W.2d at 439, 441–43 (suspending attorney who withdrew retainer fees in advance of earning them, but in fact earned at least a substantial portion of the fees); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586, 590 (Iowa 2011) (suspending attorney who prematurely withdrew entire amount of retainer funds as fees in excess of amount actually earned). Since retainer funds exist for the purpose of paying attorney fees that will be incurred in the future, the conversion of retainer funds by an attorney can be consistent with a claim that the funds were intended to be earned as fees. The intent to withdraw funds as fees is essential to a colorable-future-claim defense.

In the Anna Charles matter, Carter converted funds from his trust account that were not held as a retainer or advance fee. They were funds of the estate that could only be used as attorney fees if approved by the court. Additionally, Carter converted the funds at times that were inconsistent with an intent to take the funds as estate fees. The evidence further supported a finding that the amount of funds converted by Carter had no relationship to an amount that would be actually earned. Under these circumstances, the evidence failed to support a colorable future claim to avoid revocation. A colorable future claim to nonretainer funds does not involve a bare claim that *some* of the converted funds *would have been* earned. In essence, that is the claim asserted by Carter. Moreover, we have made it clear that conversion does not depend on the amount of funds converted. *See Comm. on Prof'l Ethics & Conduct v. Rowe*, 225 N.W.2d 103, 103, 104 (Iowa 1975) (ordering revocation of license for the conversion of client funds in the amount of $1500).

We conclude the Board proved by a convincing preponderance of the evidence that Carter converted client funds when he withdrew $6300 from his trust account in March and April 2009 and that he did so without a colorable future claim to the funds. The claim by Carter that he was unable to establish his right to the client funds because of lost records was not supported by credible evidence. He failed to come forward with credible evidence.

**IV. Sanctions.**

We revoke an attorney's license to practice law for stealing client funds. *Reilly*, 708 N.W.2d at 84–85. Carter converted client funds in this case without any colorable future claim to the funds. This conduct alone is enough to support revocation, and it is unnecessary for us to further consider the impact of his other unethical conduct. *See Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Strand*, 841 N.W.2d 600, 604 (Iowa 2014).

**V.  Conclusion.**

We revoke the license of John Michael Carter to practice law in this state.  The costs of this proceeding are assessed against Carter.

**LICENSE REVOKED.**