# IN THE SUPREME COURT OF IOWA

No. 14–1988

Filed March 27, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MACHELLE LEE CRUM,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports respondent committed ethical violations and recommends the revocation of the attorney's license. **LICENSE REVOKED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Machelle L. Crum, Newton, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Machelle L. Crum, alleging Crum violated the Iowa Rules of Professional Conduct and the Iowa Court Rules, and committed theft by misappropriation under Iowa Code section 602.10119 (2013). A division of the Grievance Commission of the Supreme Court of Iowa found Crum violated the Iowa Rules of Professional Conduct and the Iowa Court Rules, and committed theft by misappropriation. Specifically, the commission found she has a pattern of repeated neglect, a lack of communication with clients, a lack of regard for the administration of justice, and she made dishonest statements to clients and the court and committed theft by misappropriation of client funds. The commission recommends we revoke Crum's license to practice law.

On our de novo review, we find the Board established by a convincing preponderance of the evidence Crum committed numerous violations of our rules and committed theft by misappropriation of client funds without having a colorable future claim to those funds. Accordingly, we revoke Crum's license.

**I. Prior Proceedings.**

On July 29, 2014, the Board filed a complaint against Crum alleging six counts of ethical violations. On August 1, a Jasper County deputy sheriff personally served the Board's complaint on Crum. On August 7, the Board filed a motion with the commission requesting permission to serve more than thirty requests for admissions on Crum. The commission set a conference call hearing on the motion for August 22. On August 22, the commission was unable to reach Crum at the number on file with the office of professional regulation and she did

not attempt to dial into the conference call at any time. The commission granted the Board's motion on the same day.

On September 9, the Board filed a motion to invoke Iowa Court Rule 36.7. The motion alleged Crum failed to file an answer to the Board's complaint within twenty days as required by rule 36.7, and therefore, under the rule the commission should consider all allegations of the complaint admitted. *See* Iowa Ct. R. 36.7. On September 10, the commission set a hearing on the motion for September 22 by conference call.

On September 22, the commission granted the motion finding, pursuant to rule 36.7, it would deem all factual allegations in the complaint admitted. The commission noted Crum failed to answer or request more time for responding to the complaint. Crum also failed to dial into the conference call for the motion hearing.

The commission held a hearing on October 23. The Board presented three witnesses and introduced eighty-four exhibits in support of the allegations against Crum. The Board chose not to call three of the clients in the complaint. The commission issued a written finding of facts on December 1.

Through her conduct with the six clients, the commission found Crum violated numerous rules. In the Cook matter, the commission found Crum violated Iowa Rules of Professional Conduct: 32:1.3 (requiring a lawyer to act with reasonable diligence and promptness), 32:1.4(a)(2) (requiring a lawyer to consult with the client regarding how "the client's objectives are to be accomplished"), 32:1.4(a)(3) (requiring a lawyer to keep the client informed of the status of his or her case), 32:1.4(a)(4) (requiring a lawyer to comply with the client's request for information), 32:3.2 (requiring a lawyer to "make reasonable efforts to

expedite litigation consistent with the interests of the client"), and 32:8.4(d) (stating it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice").

In the Graham matter, the commission found Crum violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3), 32:1.4(a)(4), 32:1.15(d) (requiring a lawyer to promptly return any client funds or property to the client when he or she is entitled to them), 32:1.16(d) (requiring a lawyer to protect his or her client's interest upon termination of representation), 32:3.4(c) (stating it is misconduct for an attorney to "knowingly disobey an obligation under the rules of a tribunal"), 32:8.4(b) (stating it is professional misconduct for a lawyer to commit a crime that reflects poorly on his or her "honesty, trustworthiness, or fitness"), 32:8.4(c) (stating it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), and 32:8.4(d). The commission also found Crum violated Iowa Court Rule 45.7(4) (requiring a lawyer to provide clients with an accounting of advance fee withdrawals including the time, amount, and purpose of the withdrawal) and Iowa Code section 602.10119 (2013) (stating an attorney who retains unearned funds or property after the client has demanded its return is "guilty of a theft and punished accordingly").

In the Feagins matter, the commission found Crum violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3), 32:1.4(a)(4), 32:1.15(d), 32:1.16(d), 32:3.4(c), 32:8.4(b), 32:8.4(c), and 32:8.4(d). The commission also found Crum violated Iowa Court Rule 45.7(4) and Iowa Code section 602.10119.

In the Heck matter, the commission found Crum violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3),

32:1.4(a)(4), 32:1.15(a) (requiring a lawyer to keep client property in the lawyer's possession separate from their own property), 32:1.15(c) (requiring client's advance payments to be deposited into a trust account and permitting client funds which were paid in advance to be withdrawn only as they are earned), 32:1.15(f) (stating all client trust accounts are governed by Iowa Court Rules chapter 45), 32:1.16(d), 32:3.4(c), 32:8.4(b), 32:8.4(c), and 32:8.4(d). The commission also found Crum violated Iowa Court Rule 45.2(2) (requiring a lawyer to provide clients with a full accounting of retained funds or property and return any funds or property the client is entitled to), rule 45.7(4), and Iowa Code section 602.10119.

In the Elliott matter, the commission found Crum violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3), 32:1.4(a)(4), 32:1.16(b), 32:3.4(c), and 32:8.4(c).

In the Steil matter, the commission found Crum violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3), 32:1.4(a)(4), 32:1.15(a), 32:1.15(c), 32:1.15(f), 32:1.16(d), 32:3.4(c), 32:8.4(b), 32:8.4(c), and 32:8.4(d). The commission also found Crum violated Iowa Court Rule 45.2(2), rule 45.7(4), and Iowa Code section 602.10119.

The Board did not recommend a particular sanction, but rather requested the commission recommend an appropriate sanction for Crum's actions. The commission recommends we revoke Crum's license to practice law in Iowa based on our strong history of revocation when an attorney misappropriates client funds.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.11(1). The Board must prove violations by a convincing

preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Id.* (internal quotation marks omitted). The court reviews the commission's findings and recommendations, but they are not binding on the court. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 470 (Iowa 2014).

Additionally, because Crum failed to respond to the Board's complaint in any manner, we treat the allegations in the complaint as admitted pursuant to Iowa Court Rule 36.7. Further, the evidence the Board presented regarding the allegations is uncontested. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 677 (Iowa 2010). We base our decision upon our de novo review of the record and the admissions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 544 (Iowa 2012).

### III. Findings of Facts.

On our de novo review, we make the following findings of facts.

**A. Jerome Cook Representation (Count I).** On December 24, 2012, Jerome Cook filed an application for postconviction relief, arguing his sentence was incorrectly calculated. On December 26, the district court appointed Crum to represent Cook in his PCR proceedings. Cook sent Crum a time computation and notes explaining why he believed the state incorrectly calculated his sentence.

On February 21, 2013, Cook filed a letter with the district court judge notifying the court that Crum had not answered any of his letters. He also asked for an update on the progress of his case because according to his calculations his correct release date was February 18,

2013. The district court ordered a conference call for April 9 to set the trial for the PCR application. Crum failed to call in for the hearing.

The district court ordered another trial-setting conference call noting Crum failed to make contact with the court on April 9, and noting Cook's correspondence with the court complaining about Crum's lack of contact with her client. The district court set the new trial-setting conference call for April 30 and ordered Crum to appear personally and be prepared to explain to the court the efforts she had made in the case.

On April 19, Cook filed a motion claiming ineffective assistance of counsel. Cook stated he had written Crum four times and she had not responded to any of his correspondence or done anything on his case. Crum sent attorney T.J. Hier to the trial-setting conference on April 30 in her place, and Hier reported to the court Crum had a family emergency and requested a continuance. The district court rescheduled the hearing for May 14.

On May 6, Cook sent the district court a motion requesting the court to send all documents directly to him because Crum failed to inform him of the April 30 hearing and he only learned about it after receiving the order for the rescheduled hearing. On May 7, Crum made an oral motion to withdraw as counsel for Cook. The district court granted the motion to withdraw and appointed new counsel for Cook.

**B. Amy M. Graham Representation (Count II).** In May 2012, Amy Graham hired Crum to handle a custody matter and draft a will for her. Graham and Crum did not have a written fee agreement, but Crum indicated the retainer for the two matters would be $2000. Graham paid Crum in three checks, with some time in between the payments because Graham was paying the retainer as she was able.

When Graham paid the last installment of the $2000 retainer in March 2013, she believed Crum would begin work on her case. In March, Graham met with Crum to discuss her desires for the custodial arrangements regarding her daughter. After that discussion, Graham called Crum continuously, checking to see if Crum had made any progress on her case. At some point between March and July, Crum stopped answering Graham's phone calls and texts. On July 19, Graham sent Crum an email stating,

> I know you are busy and going through alot on your end personally, however I gave you the last installment of my $2000.00 you quoted me for my case more than a few months ago. I am at the point now where I think it would be in both our best interest to just get my payment back and I will continue with another attorney. I am desperate to get this entire case behind me and I do not feel as if it is going anywhere and don't have the confidence that it will any time soon.

Graham never received a reply to this email and after receiving no response, Graham sent another email stating, "Can you please provide me with the number for the Iowa Bar Association? If I don't receive a response within 48 hours, I will obtain the number through other methods." Crum never replied to this email. After failing to receive a reply regarding the status of her case or the return of her money, Graham filed a complaint with the Board. The Board notified Graham we suspended Crum's license on September 24, 2013, for failing to comply with reporting requirements, but Crum never notified Graham of this suspension.

At some point between May 2012 and March 2013, Crum did prepare a will for Graham, charging her $300 out of the $2000 retainer. Graham testified she was pleased with the will. Graham was able to hire another attorney, Lucas Otto, to handle her custody matter.

Crum never provided Graham with an accounting of fees and expenses earned and to this date has not returned any unearned portion of the $2000 Graham paid Crum to handle her custody issues and draft a will, even though she requested the return of the funds.

**C. Megan J. Feagins Representation (Count III).** On March 25, 2013, Megan Feagins hired Crum and paid her a $1000 retainer. Feagins hired Crum to file a petition for dissolution of her marriage. Crum failed to do so before Feagins's former spouse filed his own petition.

The district court scheduled a pretrial conference on the dissolution for July 26. Feagins's former spouse served Feagins with the dissolution paperwork. Crum communicated to Feagins that she was in the hospital and Feagins did not hear from Crum again until twenty days later. At which time, Crum untruthfully told Feagins she had sent an answer to the clerk of court on May 10.

The district court ordered the parties to participate in mediation and set a hearing on any unresolved issues for June 21. A mediation coordinator contacted Feagins because the mediator was unable to contact Crum. Feagins also had to communicate to Crum that her former spouse's attorney, Robert Conrad, was unable to communicate with Crum because she would not answer her phone. On June 21, the district court continued the pretrial conference and ordered Crum to file an appearance and acceptance of service because she told the court she would.

Crum filed an appearance and answer on June 27 and hand delivered a copy to opposing counsel. On that same day, Crum, opposing counsel, and Feagins's former spouse participated in mediation. Crum failed to notify Feagins about the mediation and as such, Feagins did not

attend or give Crum her consent to any settlement. That evening, Crum communicated to Feagins that she reached a settlement during mediation but that other steps needed to be completed. Feagins did not speak to Crum again until July 8, when she contacted Crum because Feagins's former spouse would not return the couple's minor child.

Conrad filed a request to dismiss the hearing on temporary matters because the parties had settled the case in mediation. The district court granted the motion and confirmed the pretrial conference set for July 26. Crum told Feagins she had received some cash and Feagins's wedding band from Conrad for the settlement. Crum told Feagins she was waiting to receive the dissolution of marriage decree. The district court continued the July 26 pretrial conference to August 30 at the request of counsel. Over the next month, Feagins texted Crum in an attempt to contact her and Crum failed to respond to Feagins's eight attempts to contact her.

On August 30, the district court, on the report the parties had settled the case, ordered the parties to submit a stipulated decree and pretrial documents by September 20 and scheduled a compliance hearing for the same day. Feagins attempted to contact Crum again with no response. On September 20, the district court extended the deadline for the stipulated decree to October 25. On September 24, we suspended Crum's license, but Crum never notified Feagins of this suspension.

Feagins made a number of attempts to contact Crum and get a copy of her file and the documents from the mediation, but Crum never sent the requested documents to Feagins. Crum never provided an accounting of the expenses and fees earned out of the $1000 retainer. To date, Crum has not returned any portion of the retainer or the cash

and wedding band she reportedly received from the settlement, even though Feagins requested the return of the property.

On October 1, the Board notified Crum that Feagins filed a complaint against Crum. The Jasper County sheriff personally served notice of the complaint upon Crum. The Board had a second notice of the complaint personally served upon Crum, but Crum failed to respond to either notice.

Meanwhile, Feagins hired a new attorney, Gary E. Hill, to handle the dissolution case. The district court rescheduled the compliance hearing to November 22. Hill filed an amended answer and a motion for a status conference hearing on November 12. The motion stated Crum did not tell Feagins about the mediation and she had not given her consent to the settlement, that Crum has not returned any of Feagins's file despite repeated requests, and that Crum kept property from Feagins that was rightfully hers. Hill then asked the court for an in-person status conference to determine the status of the dissolution.

**D. Sandra S. Heck Representation (Count IV).** On July 17, 2013, Heck met with Crum in Crum's home regarding a petition for dissolution of her marriage that Heck believed her spouse was filing. The same day, Heck gave Crum a $500 retainer to handle what Crum believed would be a simple divorce. Crum asked Heck to leave the payee line blank because Crum had a stamp. The next day an individual named Carol Twedt, Crum's mother, negotiated and endorsed the check.

After Crum was hired, Crum and Heck continued to communicate throughout July and August, waiting for her spouse to file a petition. These communications were mainly through text messages and phone calls. In late August, Heck went to the Tama County courthouse to see if her spouse had filed a petition for dissolution. Heck discovered her

former spouse filed a petition on August 6. Heck contacted Crum to inform her of the petition and met with Crum on September 3 to sign an acceptance of service.

During the meeting, Heck gave Crum an additional $500 because Crum told Heck the proceedings were not going to be as simple as she originally presumed. Again, Heck left the payee line blank. Crum also made this check payable to Twedt. A week after this meeting, Heck contacted Crum to check the status of her case. Crum indicated they were waiting for the opposing party to make a list of demands and Crum would contact Heck once this occurred. After this communication, Crum did nothing further on the case.

Heck repeatedly attempted to contact Crum through phone calls and text messages, both of the ways the two had communicated in the past, but she never received a response. On October 2, Heck's former spouse informed Heck we suspended Crum's law license. Crum never informed Heck of her suspension. Heck sent Crum a registered letter requesting the return of her money. The post office returned the letter for an insufficient address. Crum never provided Heck with an accounting of earned fees and expenses and to this date has not returned any unearned portion of the retainer. Heck hired a new attorney, Gilbert R. Caldwell III, to handle the dissolution.

On November 20, the Board notified Crum that Heck filed a complaint. The Jasper County sheriff personally served the notice of the complaint upon Crum. The Board sent Crum a second notice of the complaint and the sheriff personally served Crum the notice. Crum never responded to either of the Board's notices.

**E. Christie L. Elliott Representation (Count V).** On August 10, 2012, Elliott's former spouse filed a petition for modification of a decree

of dissolution requesting a change in custody, visitation, and child support obligations for the couple's two minor children. The district court scheduled a pretrial conference for November 11. Elliott filed a pro se handwritten answer to the modification petition. Elliott's former spouse filed an application for temporary orders asking the court for temporary visitation while the action was pending. The district court set a hearing on the application for November 2.

Crum filed an appearance on Elliott's behalf on October 4. Elliott did not pay Crum a retainer for her services. The district court entered an order on the stipulation reached by the parties regarding visitation during the pendency of the case. The court ordered the parties to participate in mediation within sixty days of the order.

On January 11, 2013, the district court continued the deadline for mediation pursuant to a motion by Elliott's former spouse. Due to the extension of the deadline, the period for the stipulated visitation ended and Elliott's former spouse filed a new application for temporary orders regarding visitation for the upcoming months. The district court ordered a hearing on the temporary application for February 22. Following the hearing on February 22, the district court filed an order setting temporary visitation and ordering the parties to set a trial date prior to September 1.

After the February hearing, Elliott never heard from Crum again. On September 13, the district court set the matter for trial on November 5. On November 5, the trial commenced without Crum and without Elliott, because Crum failed to notify her of the trial. On the same day, the district court entered a decree of modification after hearing the petitioner's testimony and reviewing the file. Elliott received an email

copy of the decree of modification and learned for the first time of the November 5 trial.

Upon learning of Crum's failure to appear at the trial, Elliott hired new counsel, Lois Vroom. Vroom filed a motion to set aside to the decree, stating that Elliott was not aware of the trial because Crum never communicated the trial date to her or mailed her a copy of the scheduling order. The motion also disclosed that Elliott learned of Crum's September 24 suspension the week prior to the filing of the motion and that Crum never informed Elliott of her suspension.

On November 21, the district court set a hearing on the motion. On December 13, Judge John Lloyd granted Elliott's motion to set aside the decree and ordered the parties to schedule a new trial in the next fourteen days. On December 17, the Board notified Crum that Judge John Lloyd filed a complaint against Crum for her actions in the Elliott case. The Jasper County sheriff personally served the notice of the complaint upon Crum. The Board sent Crum a second notice of the complaint, which the sheriff personally served. Crum failed to respond to either notice.

**F. Joshua R. Steil Representation (Count VI).** On August 10, 2013, Steil hired Crum to handle his divorce. Steil paid Crum a $1000 retainer for her to file a petition of dissolution and handle the matter. Crum and Steil met at his mother's place of work, which was where Crum's mother worked as well. Crum told Steil she did not have a bank in town and asked him to make the retainer check payable to her mother, Twedt. Crum told Steil she planned to cash the check that day. Steil, who had never interacted with a divorce attorney, assumed she needed to cash the check to pay to file the petition.

Steil never heard from Crum again after the August 10 initial meeting. Steil made numerous attempts to contact Crum by phone at her office number and personal number. Unable to reach Crum, Steil hired a new attorney to handle the matter, David Nagle. Nagle filed a petition for dissolution on Steil's behalf on October 18.

Crum never provided Steil with an accounting of the $1000 retainer he paid to her and, at this time, she has not returned the funds to him. Crum also failed to inform Steil of her September 24 suspension; he only discovered this after hiring Nagle.

On February 19, 2014, the Board notified Crum that Steil filed a complaint against her. The Jasper County sheriff personally served the notice of the complaint. The Board sent Crum a second notice of the complaint. The Board sent the second notice by certified mail through the United States Post Office and Crum signed for the letter on April 10. Crum failed to respond to either notice.

### IV. Ethical Violations.

The record is replete with examples of Crum's unethical conduct, including a pattern of repeated neglect, a lack of communication with clients, a lack of regard for the administration of justice, dishonest statements to clients and the court, and a failure to cooperate with the Board. However, there is ample evidence in the record to prove Crum misappropriated client funds. Therefore, it is unnecessary for us to address Crum's other violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 116 (Iowa 2014).

The Board charged Crum with misappropriation of funds. The Iowa Code provides:

> An attorney who receives the money or property of a client in the course of the attorney's professional business,

and refuses to pay or deliver it in a reasonable time, after demand, is guilty of a theft and punished accordingly.

Iowa Code § 602.10119.

A "criminal conviction is not a prerequisite to finding a violation under our rules." *Thomas*, 844 N.W.2d at 116. Once the Board presents evidence of theft by misappropriation, the burden shifts to the attorney to prove he or she has a colorable future claim to the funds. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232–33 (Iowa 2014) ("Thus, an attorney in a disciplinary proceeding bears the burden of coming forward with evidence of a colorable future claim, but the burden to prove conversion remains with the Board."); *see also Thomas*, 844 N.W.2d at 117 (finding the lawyer misappropriated client funds for his own use without having a colorable future claim to the funds). Here, by failing to respond to the Board, Crum failed to prove a colorable future claim to any of her clients' funds and property.

In her representation of four of the clients—Graham, Feagins, Heck, and Steil—Crum accepted retainers for the case at the initial meeting with the client before she performed any work on the case. In the Graham matter, Crum charged Graham a $2000 retainer to draft a will and handle a custody dispute. Crum delivered the will to Graham and met with Graham to discuss the client's desires for the custody issues. However, despite Graham's demands for Crum to return the money, Crum never refunded the unearned portion of the $2000, of which she indicated $300 was for the will. She also never provided Graham with an accounting of fees and expenses. Crum did not present evidence she had a colorable future claim to the funds. We find the record establishes Crum committed theft by misappropriation.

In the Feagins matter, Crum charged Feagins a $1000 retainer to file a petition for dissolution. While Crum did some work on the matter, Crum ultimately abandoned her client in the middle of the case. Additionally, Crum had in her possession $400 and a wedding band belonging to Feagins. Crum has not returned this property to Feagins. Crum has never provided Feagins with an accounting of the fees and expenses she incurred during representation and kept the entire $1000 retainer despite requests for its return. Crum did not present evidence she had a colorable future claim to the funds or the wedding band. We find by retaining both the settlement property and the retainer, Crum committed theft by misappropriation.

In the Heck matter, Crum took a total of $1000 from the client. Crum did assist the client in dealing with a dispute between Heck and her former spouse and met with the client once after that incident. However, Crum never provided Heck with an accounting of the fees and expenses earned in her case. Crum never returned the unearned portion of the retainer to Heck, despite a written demand for the return of the funds. Crum did not present evidence she had a colorable future claim to the funds. The record also establishes theft by misappropriation in the Heck matter.

In the Steil matter, Crum took a $1000 retainer from Steil at their initial meeting. After the initial meeting, Steil was never able to contact Crum again but made many demands for the return of the money and had to pay another attorney to handle his dissolution case. Crum never performed any work on the case and failed to provide Steil with an accounting for any portion of the money she may have earned, although it is very questionable she earned any portion of the funds. Crum did

not present evidence she had a colorable future claim to the funds. By retaining these funds, Crum committed theft by misappropriation.

In each of these matters, Crum knowingly retained client funds she had not earned and she has yet to return this property to its rightful owners despite repeated demands for their money and property to be returned. Crum also failed to present evidence she had a colorable future claim to the funds and property. *See Carter*, 847 N.W.2d at 232–33. This conduct satisfies the elements required for the act of theft by misappropriation. Further, while it is true Crum did not steal large sums of money, the amount of money misappropriated is of no consequence. *Thomas*, 844 N.W.2d at 117.

## V. Sanction.

The myriad of rules Crum violated carry varying sanctions, but the violation that is dispositive is Crum's theft by misappropriation. If Crum had a colorable future claim to the funds, the sanction may not be as severe. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006) (suspending an attorney who misappropriated funds with a colorable future claim to the money). However, no place exists in our profession for attorneys who convert client funds. "It is almost axiomatic that we revoke licenses of lawyers who do so." *Thomas*, 844 N.W.2d at 117.

Here, Crum took money from four clients prior to earning it and then ceased all contact with the clients despite the clients request to return the unused parts of any retainers and property. She could not have earned the fees because she did not perform the work the clients paid her to do for them. Additionally, each of these clients had to expend more money to hire a new attorney to do the work they initially paid Crum to perform.

**VI. Disposition.**

After full consideration of the allegations brought by the Board, we order the license of respondent, Machelle L. Crum, to be revoked effective with the filing of this opinion. We assess costs of this matter to the respondent pursuant to Iowa Court Rule 35.27(1).

**LICENSE REVOKED.**