# IN THE SUPREME COURT OF IOWA

No. 18–1365

Filed November 9, 2018

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DEREK T. MORAN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends the revocation of an attorney's license to practice law for violations of ethical rules. **LICENSE REVOKED.**

Tara van Brederode and Amanda K. Robinson, for complainant.

Derek T. Moran, Urbandale, pro se.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Derek T. Moran with violating rules of professional conduct in connection with his representation of numerous commercial truck drivers and his representation of a parent in a child custody matter. The charges included misappropriation or conversion of client funds. Moran failed to meet his burden under Iowa Court Rule 36.8(2) to produce evidence that he had a colorable future claim to unearned funds. The Iowa Supreme Court Grievance Commission found Moran violated multiple rules of professional conduct, including conversion of client funds and recommended revocation of his license. On our review, we determine that Moran converted client funds for his personal use, among other violations, and we revoke his license to practice law in the State of Iowa.

## I. Background Facts and Proceedings.

Until his temporary suspension in April 2016, Derek Moran practiced law in Urbandale, Iowa. We find the following facts on our de novo review of the record.

**A. CDL Consultants.** CDL Consultants provides safety and compliance services to motor carriers and professional drivers nationwide. As part of its services, CDL Consultants hires attorneys to represent its customers who have received traffic citations that may affect their commercial driver's licenses. The goal of the legal representation is to resolve the citations in a manner avoiding loss of driving privileges and employment. CDL Consultants hired Moran to represent its customers who received traffic citations in Iowa. There was no written contract between CDL Consultants and Moran. The parties worked on a case-by-case basis. CDL Consultants referred drivers' citations to Moran and paid Moran separately for each citation. Moran agreed to enter an appearance

on behalf of the cited driver and attempt to negotiate a favorable resolution. Moran was paid a flat fee between $150 and $350 per citation. If the case went to trial, Moran would be paid an additional fee.

Approximately a year and a half into this business relationship, CDL Consultants began receiving complaints from drivers. The drivers reported that Moran failed to communicate with them, failed to appear in court or inform them of required court dates, or entered guilty pleas without their permission. Some reported that their licenses had been suspended for missing court appearances. CDL Consultants tried to contact Moran, but he stopped returning phone calls and stopped responding to emails. CDL Consultants sent a staff person from Chicago to Moran's office in Urbandale. The staff member could see Moran inside, but Moran refused to come to the door.

Complaints against Moran were made by thirty-four professional drivers in thirty-five cases (one driver had two separate cases). Moran pocketed fees totaling $6900 from CDL Consultants to represent these clients. In four cases, Moran failed to enter an appearance or take any action. In nine cases, Moran entered an appearance and plea of not guilty, but then failed to perform further work or notify the clients of court dates, leading to their convictions when no one appeared for trial. In twenty-two cases, Moran entered guilty pleas without the client's consent.

On November 25, 2015, CDL Consultants sent Moran a letter expressing its concern that he had not been working on the cases despite having been paid $6900. CDL Consultants demanded a refund of the legal fees. Moran did not respond to the letter and did not refund any of the fees. There is no evidence Moran deposited the fees into a trust account, and Moran did not provide any accounting of his legal services. There is, however, evidence that Moran took unearned fees.

CDL Consultants had to hire other counsel to take over the cases and incurred approximately $11,000–$12,000 in additional legal expenses. Some of the drivers lost their jobs after their commercial driver's licenses were suspended in the cases Moran had mishandled. Others faced discipline, loss of bonuses, and higher insurance rates.

**B. The Tharp Representation.** Travis Tharp hired Moran to represent him in a child custody matter. Moran agreed to represent Tharp for a flat fee of $750 paid in three monthly installments of $250. Moran filed a petition on behalf of Tharp on February 12, 2014. Tharp was in an accident and hospitalized eleven days before a hearing. Tharp informed Moran of his injury, but did not want to continue the hearing. Tharp wanted the case to move forward as quickly as possible due to allegations that his daughter was being abused while in the care of other family members.

Nonetheless, without Tharp's consent, Moran filed a motion to continue the hearing. Despite his injuries, Tharp was prepared to go to court and was disappointed when Moran informed him that Moran had obtained a continuance without Tharp's permission.

After the continuance, Moran neglected Tharp's case and ceased communicating with Tharp for several months, until Tharp told Moran he could pay another $250. Moran accepted that payment and again stopped communicating with Tharp despite Tharp's numerous attempts to reach Moran. In January 2016, the court dismissed Tharp's case for lack of prosecution pursuant to Iowa Rule of Civil Procedure 1.944. Moran did not tell Tharp about the dismissal. Tharp learned of the dismissal when he went to the courthouse to determine the status of his case. Once the case was dismissed, Tharp lacked the money to hire another attorney. Tharp did not receive any refund from Moran.

**C. Failure to Cooperate with Disciplinary Authority.** The Board repeatedly attempted to contact Moran regarding the CDL Consultants and Tharp matters. Moran failed to respond to any notices and inquiries from the Board. Accordingly, we temporarily suspended Moran's license to practice law on April 14, 2016.

On September 20, 2017, the Board filed a complaint against Moran with the grievance commission alleging numerous violations of the Iowa Rules of Professional Conduct. The Board gave Moran notice pursuant to Iowa Court Rule 36.8 that if we found Moran violated the disciplinary rules alleged in the complaint for misappropriation or conversion of client funds, he was at risk of having his law license revoked. *See* Iowa Ct. R. 36.8(1). The notice also stated that if the Board were able to establish that funds were missing from his trust account, the burden would shift to Moran to prove he had a colorable future claim to the funds. *Id.* Attorney Alexander Wonio filed an answer on behalf of Moran. In his answer, Moran gave notice that he intended to rely on a defense of a colorable future claim to the funds. *See id.* r. 36.8(2). The disciplinary case was set for hearing on February 15, 2018.

The Board served discovery on Moran on October 30, 2017. Moran failed to respond to the discovery requests. The Board filed a motion to compel on January 3, 2018. The commission granted the motion, and Moran was required to comply with the discovery request by January 31. Before that deadline expired, Wonio filed a motion to withdraw due to lack of communication from Moran. The commission granted Wonio permission to withdraw. Moran never complied with the Board's discovery requests.

After Wonio's withdrawal, the commission rescheduled the hearing to May 3 to allow Moran time to find new counsel or to prepare to represent himself.  Moran did not hire a new attorney.

The commission held the hearing on May 3.  Moran did not appear for the hearing.  The commission issued its "Findings of Fact, Conclusions of Law, and Recommendations" on August 9.  The commission found that Moran violated the following Iowa Rules of Professional Conduct when representing clients for CDL Consultants: rule 32:1.3 (acting "with reasonable diligence and promptness in representing a client"); rule 32:1.4(a)(2) (consulting with client about the means by which client's objectives are to be accomplished); rule 32:1.4(a)(3) ("keep[ing] the client reasonably informed about status of the matter"); rule 32:1.4(a)(4) (complying promptly with reasonable requests for information); rule 32:1.15(a) (holding client "property . . . in a lawyer's possession in connection with a representation separate from lawyer's own property"); rule 32:1.15(c) (depositing unearned fees into a client trust account until they are earned); rule 32:8.4(b) ("commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"); and rule 32:8.4(c) ("engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation");.

The commission found that Moran violated the following rules of professional conduct in representing Tharp: rule 32:1.3; rule 32:1.4(a)(2); rule 32:1.4(a)(3); rule 32:1.4(a)(4); rule 32:8.4(b); and rule 32:8.4(c).  The commission also found that Moran violated rule 32:8.1(b) (failing to respond to a lawful demand for information from a disciplinary authority).

The commission recommended we revoke Moran's license based on its finding that he converted client funds.  The Board recommends

revocation. Moran has not responded to the Board's statement recommending revocation.

## II. Standard of Review.

We review attorney disciplinary cases de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015). The Board has the burden of proving a violation of an ethical rule "by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012)).

"Upon our de novo review of the record, we 'determine whether an attorney's conduct violates our ethical rules, and if it does, we must determine the proper sanction for the violation.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 162 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey,* 790 N.W.2d 801, 804 (Iowa 2010)). We are free to "impose a lesser or greater sanction than recommended by the commission." *Van Ginkel*, 809 N.W.2d at 102.

## III. Violations.

On our de novo review of the record, we agree that Moran violated the rules of professional conduct identified by the commission. Moran neglected client matters, failed to communicate and consult with clients, failed to provide clients with information about their cases, failed to deposit fees into a client trust account, and failed to comply with requests for information during the disciplinary proceedings. Most significantly, Moran failed to offer evidence of a colorable future claim to funds he

received for work he did not perform. As a result, we agree with the commission that the Board proved by a convincing preponderance of the evidence that Moran converted funds for his own use and thereby violated rules 32:8.4(b) and (c). Because this determination warrants revocation of his license, it is unnecessary to discuss his other violations in detail. *See Kowalke*, 918 N.W.2d at 162; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 231–32 (Iowa 2014).

"The professional standards pertaining to the protection of client funds 'are well known and . . . long-standing.' " *Carter*, 847 N.W.2d at 232 (alteration in original) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004)). "Misappropriation or conversion of client funds results in revocation, except in instances in which the attorney had a colorable future claim to the funds or did not take the funds for personal use." *Id.* The Board alleged Moran converted client funds. *See* Iowa Ct R. 36.8(1). In his answer to the Board's complaint, Moran alleged he had a colorable future claim to the funds. *Id.* r. 36.8(2). Moran had the burden of coming forward with evidence in support of a colorable future claim, while the burden of proving conversion remained on the Board. Iowa Ct. R. 36.8(2); *Carter*, 847 N.W.2d at 232–33. Moran failed to respond to discovery and did not participate in the disciplinary hearing. Moran presented no evidence that he had a colorable future claim to funds he converted.

Moran collected flat fees from both CDL Consultants and from Tharp. There is no evidence that he deposited the funds into a client trust account. Moran subsequently performed little to no work on many of the cases. He ceased communicating with his clients, resulting in missed court appearances. His clients suffered harm as a result, including loss of their commercial driver's licenses and employment. Moran refused

demands to refund any of the fees he took. This case is similar to *Iowa Supreme Court Attorney Disciplinary Board v. Crum* in which we revoked the license of an attorney who "took money from four clients prior to earning it and then ceased all contact" and refused refund requests. 861 N.W.2d 595, 606 (Iowa 2015). Moran "could not have earned the fees because [he] did not perform the work the clients paid [him] to do for them." *Id.* Moreover, CDL Consultants had to incur $11,000 to $12,000 in additional fees to resolve the cases it had initially paid Moran to handle. *See id.* (noting the "clients had to expend more money to hire a new attorney to do the work they initially paid [him] to perform").

Although the record does not reveal if Moran has been charged with a crime, "a criminal conviction is not a prerequisite to finding a violation under our rules." *Thomas*, 844 N.W.2d at 116. Professional misconduct occurs when an attorney "commit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). Similarly, professional misconduct includes "conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). We determine that the Board met its burden of proving Moran violated those rules by converting client fees, and we determine that Moran had no colorable future claim to the funds.

## IV. Sanctions.

As we have repeatedly observed, "[t]here is no place in our profession for attorneys who convert funds entrusted to them. It is almost axiomatic that we revoke licenses of lawyers who do so." *Thomas*, 844 N.W.2d at 117 (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994)). In fact, we have found revocation appropriate "in nearly every case where an attorney converts client funds

without a colorable future claim." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500 (Iowa 2017).

Moran converted client funds for his own personal use. His behavior is antithetical to the standards of ethics and professionalism we demand from Iowa attorneys, and we agree with the commission and Board that revocation is the appropriate sanction.

## V. Conclusion.

We revoke Moran's license to practice law in the State of Iowa. All costs of this proceeding are assessed against him. Iowa Ct. R. 36.24(1).

**LICENSE REVOKED.**