# IN THE SUPREME COURT OF IOWA

No. 17–0879

Filed September 15, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**LUKE D. GUTHRIE,**

Respondent.

___

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission found the respondent committed multiple ethical violations and recommends a three-month license suspension. **LICENSE REVOKED.**

Tara M. van Brederode, Des Moines, and Andrew J. Boettger of Hastings, Gartin & Boettger, Ames, for complainant.

David L. Brown and Tyler R. Smith of Hansen, McClintock & Riley, Des Moines, for respondent.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint against an attorney alleging multiple violations of our ethical rules including the misappropriation of funds in his representation of three clients. The Board also alleged the attorney violated ethical rules arising from his conviction for domestic abuse assault. The Iowa Supreme Court Grievance Commission (commission) found eight violations of our ethical rules and recommended a three-month suspension. For the reasons outlined below, we revoke the attorney's license to practice law in the state of Iowa.

## I. Background Facts and Proceedings.

Attorney Luke Guthrie has been licensed to practice law in the state of Iowa since 2006. At the time of the conduct giving rise to this disciplinary action, Guthrie was practicing law at Roberts, Stevens, Prendergast, and Guthrie, PLLC, in Waterloo, Iowa. On November 11, 2015, Guthrie was arrested for domestic abuse assault, first offense, in Grundy County, Iowa. On November 12, Guthrie informed his law partners that he was self-admitting himself into a substance-abuse treatment program and took a leave of absence from the firm. After becoming aware of other potential ethical violations, the firm terminated Guthrie's partnership on November 24. As part of the termination, the firm informed Guthrie he would need to self-report his potential ethical violations or the firm would do so. Guthrie self-reported the potential ethical misconduct to the Board on December 7. The ethical misconduct arose out of his handling of billings and trust account issues in three separate client matters, in addition to Guthrie's arrest for domestic abuse assault.

**A. Vogel Matter.**     Guthrie represented Brian Vogel in a modification action which was finalized by decree on July 22, 2015.  A notice of appeal was filed by the opposing party on August 21.  On September 25, Guthrie and Vogel signed a fee contract and Vogel paid a retainer of $4965.50, which was deposited into the firm's trust account.  On October 16, the appellant voluntarily dismissed the appeal.  This voluntary dismissal of appeal was electronically received by Guthrie and his office at 10:35 a.m. that same date.  Guthrie was notified by staff of the dismissal, but directed staff not to notify Vogel of the dismissal.

On the same day as the voluntary dismissal, Guthrie billed Vogel for 4.1 hours of work amounting to $717.50.  Guthrie claimed that this time was for work on the proof brief and designation.  On October 22, Guthrie billed Vogel for two hours of time for work on the final brief/reply brief in the amount of $350.  On October 23, Guthrie billed Vogel for two hours of work on the final proof brief in the amount of $350.  On October 26, Guthrie billed Vogel for two hours of time for receipt and review of appellant's brief in the amount of $350.  Finally, on October 28, Guthrie billed Vogel for 1.8 hours of work on his brief in the amount of $315. There was also an additional charge for fees of $190 after the voluntary dismissal.   Therefore, following the voluntary dismissal, Guthrie billed Vogel an additional 8.6 hours in the amount of $1505 for work that was never performed.

A staff member prepared a preliminary bill for review by Guthrie. At that time, she questioned what would happen if the client requested copies of Guthrie's work product he had billed for.  Guthrie told the staff person that he doubted Vogel would ever ask for copies of the work product he billed him for, but if he did, he would have to figure

something out. Guthrie had performed no work on the proof brief, designation of appendix, or reply brief for which he billed Vogel.

On November 6, Guthrie directed staff at the firm to transfer $3797.50 from Vogel's trust subaccount to the firm's general account. That same day, Guthrie withdrew $600 as a check for fees in the Vogel case. Vogel was not advised of the dismissal of the appeal until November 15, nine days after the unearned fees were taken and three days after Guthrie took his leave of absence from the firm. The firm refunded Vogel all funds for the unearned fees.

**B. Dizdarevic Matter.** Guthrie also represented Muhamed Dizdarevic in a child custody case. On November 6, 2015, Guthrie billed Dizdarevic $262.50 for a 1.5 hour telephone conference with opposing counsel. Guthrie admitted no telephone conference occurred, which was also confirmed by opposing counsel. On the same day, Guthrie directed staff at the firm to transfer $332.50 from Dizdarevic's trust subaccount to the firm's general account. He thereafter withdrew $600 as a check for fees in the Dizdarevic case. The firm reimbursed Dizdarevic for the unearned fees.

**C. Petrick Matter.** Guthrie represented Christina Petrick in a family law case in 2015. On November 3, 2015, Guthrie billed Petrick for 1.5 hours for discovery review and a telephone conference totaling $262.50. On November 4, Guthrie billed Petrick for two hours of work in the amount of $350 for the receipt and review of a client file allegedly received from her previous attorney. On November 6, Guthrie directed staff at the firm to transfer $743.75 from Petrick's trust subaccount to the firm's general account. Guthrie then withdrew $600 as a check for fees. In reviewing this billing, another partner determined that Guthrie could not have received and reviewed the other attorney's file as she

herself received the file on November 12 after Guthrie had left the firm. As the file could not yet have been received by Guthrie, he did not receive or review Petrick's client file on November 4 as billed. Later on, another attorney at the law firm reviewed the file and determined the firm would be unable to represent Petrick due to a conflict of interest. The firm refunded Petrick the entire retainer she had paid in trust in the amount of $2500. This included the fees that Guthrie had billed.

**D. Domestic Assault.** On November 11, 2015, Guthrie was arrested for domestic abuse assault for assaulting his girlfriend. On May 9, 2016, Guthrie pled guilty to domestic abuse assault in violation of Iowa Code section 708.2A(2)(*a*)(2015). The court entered an order for deferred judgment and probation.

**E. Proceedings.** On November 10, 2016, the Board filed its complaint against Guthrie. It charged him with two counts: Count I alleged Guthrie violated six ethical rules in his representation of Vogel, Dizdarevic, and Petrick.[1] It alleged he misappropriated client funds in an amount exceeding $500 but not $1000 in value. This was in conjunction with the alleged theft of funds. Count II alleged Guthrie violated one ethical rule due to his guilty plea to domestic abuse assault.[2] On December 6, Guthrie filed his answer, admitting all of the allegations. In the original complaint, the Board recommended that Guthrie's license be revoked.

---

[1]These were Iowa Rules of Professional Conduct 32:1.5(a) (charging or collecting an unreasonable fee), 32:1.15(c) (depositing client funds into trust account), 32:1.15(d) (promptly delivering client funds or property), 32:1.15(f) (handling of client trust accounts), 32:1.16(d) (refunding of advance fees or payments), 32:8.4(b) (committing a criminal act reflecting adversely upon the lawyer's fitness to practice law—theft, and 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

[2]This rule was 32:8.4(b) (committing a criminal act reflecting adversely upon the lawyer's fitness to practice law—domestic abuse assault).

The commission conducted an evidentiary hearing on April 12, 2017. Guthrie submitted a stipulation of facts and rule violations at the time of the hearing. The stipulation was not timely submitted pursuant to Iowa Court Rule 36.16. However, the commission elected to receive it as an exhibit constituting an admission to the facts and rule violations alleged in the complaint.

The commission found Guthrie committed eight violations of the Iowa Rules of Professional Conduct: 32:1.5(a) (charging or collecting an unreasonable fee), 32:1.15(c) (depositing client funds into a trust account), 32:1.15(d) (promptly delivering client funds or property), 32:1.15(f) (handling of client trust accounts), 32:1.16(d) (refunding of advance fees or payments), 32:8.4(b) (committing a criminal act reflecting adversely upon the lawyer's fitness to practice law—theft), 32:8.4(b) (criminal act reflecting adversely upon the lawyer's ability to practice law—domestic abuse assault), and 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Based upon Guthrie's admission to the rule violations, the hearing primarily focused on the consideration of pertinent mitigating and aggravating factors. In its findings of fact, conclusions of law, and recommendations, the commission considered the rule violations, the mitigating and aggravating circumstances, and recommended a three-month suspension. Upon our review, Guthrie requests either a public reprimand or a thirty-day suspension. The Board continues to recommend revocation.

## II. Standard of Review.

We review attorney disciplinary cases de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 653 (Iowa 2017). "The Board must prove attorney misconduct by a convincing preponderance of

the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015)). We give the commission's findings and recommendations respectful consideration, but we are not bound by them. *Id.* If we find the Board proved attorney misconduct, it is within our discretion to impose a sanction that is lesser or greater than that recommended by the commission. *Willey*, 889 N.W.2d at 653.

While stipulations of fact are binding on the parties in a disciplinary proceeding, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Pederson*, 887 N.W.2d 387, 391 (Iowa 2016), "[a]n attorney's stipulation as to a violation is not binding on us," *Willey*, 889 N.W.2d at 653 (alternation in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 117 (Iowa 2015)). "Even if an attorney's stipulation concedes a rule violation, we will only find that a violation occurred if the facts are sufficient to support the stipulated violation." *Id.*

### III. Analysis.

**A. Rule Violations.** Count I of the complaint alleges Guthrie violated a number of ethical rules with regard to client trust accounts. However, at the core, the Board alleged, and the commission found, that Guthrie misappropriated client funds. Because of the severity of the allegation, we first consider the violations alleging Guthrie misappropriated client funds.

Rule 32:8.4(c) provides that it is a violation of our ethical rules for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). An attorney

violates this rule when he or she commits theft by misappropriating client funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 404 (Iowa 2016). A person commits the criminal act of theft by misappropriation when the person

> [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 116 (Iowa 2014) (quoting Iowa Code § 714.1(2) (2011)). While we utilize the same definition, we do not require a criminal conviction for theft in order to find a violation of our rules. *Id.*; *see also Comm. on Prof'l Ethics & Conduct v. Hall*, 463 N.W.2d 30, 35 (Iowa 1990) ("It is also immaterial that respondent was not charged or convicted of a crime. A criminal conviction is not a condition precedent to a discipline proceeding when the facts themselves warrant discipline."). This is due in part to the fact that we only require allegations of theft in the context of attorney disciplinary cases to be proved by a convincing preponderance of the evidence. *Green*, 888 N.W.2d at 404. "[A] criminal law defense is not a defense in a disciplinary proceeding since the purpose of a disciplinary hearing is not primarily intended to punish the lawyer but rather to protect the public." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 837 N.W.2d 649, 655 (Iowa 2013)).

Additionally, we must also find that the attorney acted with "some level of scienter" when there has been an alleged misappropriation of client funds. *Id.* at 403 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015)). Scienter requires that

the attorney acted knowingly, intentionally, or with the aim to mislead. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 698–99 (Iowa 2014).

While it may be debatable whether Guthrie misappropriated client funds involving Dizdarevic and Petrick, it is clear that Guthrie misappropriated client funds in the Vogel case. In Vogel's case, Guthrie was advised on October 16, 2015, that the appeal had been dismissed. At that time, Guthrie knew there was no remaining work to be performed on the appeal. However, Guthrie continued to bill Vogel for unperformed work for weeks thereafter. Even when questioned by staff about his billing practices, Guthrie simply stated that he doubted Vogel would notice or ask for copies of the work for which he was billed.

But Guthrie not only continued to bill Vogel for unperformed work for weeks following the voluntary dismissal of the appeal, he also directed the transfer of client funds from Vogel's trust subaccount to the firm's general account. Guthrie later personally withdrew client funds for unearned fees. Additionally, Guthrie acted knowingly when withdrawing the client fees. Guthrie admits that he authorized the transfer of the client funds to "maintain the illusion that [he] was competent and that [his] numbers looked normal to [his] partners for that month." And clearly, Guthrie knew that he had not performed the work or earned the fees.

There is also a clear acknowledgement by Guthrie of the misappropriation and conversion of client funds contained in the stipulation of facts and rule violations he signed. The stipulation contains the following paragraphs:

> 21. In all three instances described above, Respondent converted funds from Mr. Vogel, Mr. Dizdarevic,

and Ms. Petrick's retainers being held in the law firm's trust accounts.

22. Respondent, by authorizing and directing the transfer of the above three clients' funds from the trust account into the firm's general account, and upon taking a draw check in the wake of that directive, did, in fact, receive client funds.

23. Respondent misappropriated or converted for personal use the funds referenced . . . above without a colorable future claim thereto.

We find by clear and convincing evidence that Guthrie knowingly misappropriated and converted client funds in the Vogel case in violation of rule 32:8.4(c).

**B. Sanctions.** We apply a range of sanctions for a violation of rule 32:8.4(c), spanning from a public reprimand all the way to license revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cepican*, 861 N.W.2d 841, 844 (Iowa 2015). The severity of the sanction depends upon whether the attorney had a colorable future claim to the funds or whether the attorney engaged in the theft of client funds. *Id.* (laying out the test for determining whether suspension or revocation is the appropriate sanction for a rule 32:8.4(c) violation). An attorney's failure to follow the rules governing fees normally results in a less severe sanction; however, theft of client funds is grounds for revocation. *Id.* Although the Board carries the burden to show that misappropriation of funds has occurred, the attorney carries the burden of producing evidence that he or she had a colorable future claim to those funds. *Id.*

Our professional standards regarding the protection of client funds "are well known and . . . long-standing." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232 (Iowa 2014) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004)). Our sanctions in cases involving client funds

hinges upon whether the attorney had a colorable future claim to the funds. *E.g.*, *id.*

If the attorney does have a colorable future claim to the funds converted, we will not revoke the attorney's license. *E.g.*, *Thomas*, 844 N.W.2d at 117. In those cases, the attorney's violation rests not upon the misappropriation of client funds, but upon the failure to follow our rules with regard to the safekeeping of a client's funds. *Carter*, 847 N.W.2d at 232.

However, in nearly every case where an attorney converts client funds without a colorable future claim, we revoke the attorney's license to practice law. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 742 (Iowa 2013) (quoting numerous cases wherein we held revocation was the appropriate sanction when attorneys converted client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 266 (Iowa 2011) ("It is almost axiomatic that we will revoke the license of an attorney who converts a client's funds to his or her own use."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 533 (Iowa 2004) (revoking attorney's license for fictitious billing); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 145 (Iowa 2004) (revoking attorney's license for stealing client funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 655 (Iowa 2002) (revoking attorney's license for misappropriating funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon*, 602 N.W.2d 336, 339 (Iowa 1999) (revoking the license of an attorney who misappropriated client funds); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994) (revoking attorney's license for converting client funds to his own use); *Comm. on*

*Prof'l Ethics & Conduct v. Tullar*, 466 N.W.2d 912, 913 (Iowa 1991) (stating revocation is appropriate when attorneys convert client funds).

"There is no place in our profession for attorneys who convert funds entrusted to them." *Thomas*, 844 N.W.2d at 117 (quoting *Ottesen*, 525 N.W.2d at 866). Additionally, the amount of money converted does not lessen the sanction imposed. *Thomas*, 844 N.W.2d at 117; *Anderson*, 687 N.W.2d at 590. Although in this case the firm later returned all the unearned fees, and therefore the clients did not suffer a financial harm, "restitution of client funds does not preclude us from revoking an attorney's license as a sanction." *Thomas*, 844 N.W.2d at 118; *see also Anderson*, 687 N.W.2d at 590 (revoking attorney's license for withdrawing funds from an escrow account for his personal use, even though the attorney later replaced the funds).

Based upon our de novo review of the record, and the stipulated facts, we find Guthrie did not have a colorable future claim to the funds he withdrew in the Vogel matter, thus leading us to hold that he misappropriated client funds. In the stipulated facts, Guthrie admits that he did not have a colorable future claim to the funds and that this resulted in the misappropriation of client funds. Guthrie presented no evidence to the contrary. This finding is critical to the outcome of this proceeding and makes it unnecessary for us to discuss the other rule violations in detail. Likewise, we need not consider mitigating and aggravating factors that may be present here.

However, we do find it necessary to make note of several facts. First, the conduct giving rise to the ethical violations occurred over a period of approximately one month during a time when Guthrie's substance abuse reached its peak. Second, since the violations, Guthrie took immediate steps to address his substance-abuse issues. Guthrie

sought treatment and has successfully maintained his sobriety. Finally, there have been no further violations of our ethical rules since that time. Guthrie should be commended for addressing his substance-abuse issues and remaining sober. However, due to Guthrie's misappropriation of client funds, we find that revocation is the appropriate sanction.

### IV. Conclusion.

The license of Luke D. Guthrie to practice law in the state of Iowa is hereby revoked. Pursuant to our rules, Guthrie may apply for reinstatement after a period of at least five years. *See* Iowa Ct. R. 34.25(7). In the event of application for reinstatement, Guthrie must demonstrate that he is of good moral character and worthy of readmission to the bar. *See id.* r. 34.25(9). Guthrie must also pay all fees. *See id.* r. 34.25(9)(*d*).

**LICENSE REVOKED.**