# IN THE SUPREME COURT OF IOWA

No. 19–0662

Filed September 6, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KYLE L. EARLEY,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends revocation of an attorney's license to practice law for violations of ethical rules. **LICENSE REVOKED.**

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

Kyle L. Earley, Grinnell, pro se.

**MANSFIELD, Justice.**

A newly admitted Iowa attorney received retainers to handle family law matters, did essentially no work on those matters, and used the funds instead for personal purposes. The Iowa Supreme Court Attorney Disciplinary Board sought revocation of the attorney's license, and the attorney did not contest revocation or argue he had a colorable future claim to the funds when he converted them. A division of the Iowa Supreme Court Grievance Commission held a hearing and concluded that most of the alleged ethical violations had occurred and that revocation was the proper sanction. On our review, we agree with the commission and therefore revoke the attorney's license to practice law.

### I. Facts and Procedural History.

Kyle Earley graduated from law school in 2017 and was admitted to the Iowa bar that same year. At relevant times, he maintained a solo private practice in Grinnell. This disciplinary proceeding concerns Earley's representation of two different clients.

**A. Ryan Patterson Matter.** In 2018, Earley began representing Ryan Patterson in a dissolution of marriage action. Patterson agreed to pay Earley $250 per hour with a cap of $1500. Patterson also agreed to pay $300 for anticipated expenses. On April 27, Patterson's mother gave Earley a check in the amount of $1800 for the representation. Earley deposited this check into his client trust account the same day. Thereafter, Earley drafted a petition for dissolution that he did not file. He performed no other work on the case.

Between March 14 and July 25, Earley moved $5910 from his client trust account into his business checking account. He also moved $2590 from his client trust account into his personal checking account. By July 31, these account transfers left $2 remaining in Earley's client trust

account. The unearned portion of the funds received for the Patterson dissolution matter were among those transfers. Earley did not notify Patterson of the time, amount, or purpose of the withdrawals or furnish an accounting.

On June 12, in a responsive letter to the Office of Professional Regulation, Earley self-reported his conversion of client funds:

> The main purpose of this letter . . . is to self-report multiple ethics violations regarding my trust account management. I'm not sure where to start, so I will start at the beginning.

Earley went on to describe a variety of challenges he faced as he began his legal career as a solo practitioner. He explained that due to financial strain, he took on cases that were beyond his realm of expertise. He began experiencing depression and anxiety. Earley described his ongoing resentment toward his father. He noted that his father, an attorney, had committed ethical violations of his own before ultimately being disbarred. Earley continued,

> With respect to my violations, I don't have the specifics at the moment. I just know that I've taken money from my trust account before I earned it, multiple times. If I were to estimate, I would say at least 5 times. I will fully cooperate with your Office however. I will release my trust account records and give you my compensation agreement records.
>
> I am deeply sorry for my actions. I am ashamed and embarrassed. I am completely lost at the moment. I honestly don't know what I want, or how I want this situation to play out. But I know that I'm not in a good place, mentally right now. And that I need help. So, I'm asking for help.

On August 7, Earley sent a letter to Patterson admitting he had taken Patterson's $1800 without earning the funds:

> I apologize for taking so long to respond to you. The truth is that I've been avoiding this conversation because I am ashamed of my actions.

There's really no easy way to say this, so I'll just say it. I no longer have your $1800, nor can I represent you in your divorce case.

For what it's worth, I am **GENUINELY** sorry for my actions. Eventually, I will make this right. You have my word as a man. But I realize that doesn't really mean much at this point in time.

I figure that I at least owe you an explanation. So, here it is.

Several months ago I began to experience crippling anxiety, which coincided with mounting financial difficulties. I attempted to get treatment, but nothing helped. I have since made the decision to quit the practice of law and have withdrawn from all of my cases.

I have enclosed a copy of a letter that I sent to the Office of Professional Regulation (which oversees attorneys in Iowa) back in June, self-reporting multiple ethics violations (including the handling of your flat fee payment). I've enclosed this letter so that you may have a little bit of insight into what was happening with my state of mind at the time.

Factually, here is what occurred with respect to your situation. I deposited your $1800 flat fee payment in my trust account on 4/27/18. Legally, I'm only supposed to draw that money out after I've earned it. In your particular case, I don't recall doing much work on your divorce, other than some in person conversations that we had while I was working with you on your criminal cases. But, for all practical purposes, I acknowledge that I didn't do any real work on your case. Thus, I was not entitled to withdraw any of that $1800 from my account. Doing so was against the terms of our compensation agreement and was a violation of Iowa attorney ethical rules.

You can find information on how to file an ethics complaint against an Iowa attorney at www.iowacourts.gov. I have also enclosed a copy of the Attorney Complaint Form with this letter. As I mentioned, I have self-reported my violations. But I encourage you to file an official complaint as well.

Please know that at no time did I misuse your money with immoral intentions. At the time I withdrew the money, I just really needed the cash (for financial obligations). Since I fully intended on handling your entire divorce, I thought (at the time) that I was only infringing on the Iowa ethical rules. I don't mean to minimize the importance of following the ethical rules. I only mean that, from your perspective, I

thought it would be a "no harm, no foul" situation. However, shortly after taking out your money, my entire world just sort of collapsed and I was unable to function anymore. At that point, I was obligated to remove myself from the practice of law. Having done so, I now have no way to fulfill the terms of our agreement.

On September 21, the Client Security Commission sent a letter to Earley regarding the Patterson matter. *See* Iowa Ct. R. 39.12. The letter notified Earley that Patterson had sought $1800 in reimbursement from the Clients' Security Trust Fund. The Client Security Commission requested documents from Earley as part of its investigation into the matter.

On September 28, Earley responded as follows:

> I believe my letter to Mr. Patterson dated August 7, 2018 (which was attached to your claim notice letter), sufficiently explains what occurred with respect to the situation with Mr. Patterson. Simply put, I wronged Mr. Patterson. My actions were inexcusable. I deserve punishment and Mr. Patterson deserves to be reimbursed for his financial loss.
>
> I am deeply ashamed of my behavior. At this point, all I can do is apologize, try to make things right (as best I can) and attempt to learn and grow from what has been an enormously difficult 1st year of my law practice.

**B. Jonathan Beltz Matter.** In 2018, Earley also began representing Jonathan Beltz in a dissolution matter. The parties agreed to a rate of $250 per hour with fees to be capped at $1500. On March 14, Beltz tendered $900 in cash to Earley for the representation. The same day, Earley deposited the $900 into his client trust account. Earley performed only one hour of work on Beltz's case.

The fund transfers that Earley made between March 14 and July 25 included the unearned portion of Beltz's $900 advance fee payment. Earley did not notify Beltz of the time, amount, or purpose of the withdrawals, and he did not provide Beltz with a complete accounting.

Also on September 28, Earley said the following in a letter to Beltz:

I apologize for taking so long to write this letter. The truth is that I have been avoiding contacting you because I am ashamed and embarrassed of my behavior.

Here's the short version of what occurred since our last contact. Basically, I experienced a prolonged struggle with mental health issues, lasting several months, which manifested as extreme, crippling anxiety. I handled the experience very poorly. I withdrew from all of my cases (for ethical reasons) and basically disappeared from the world for a few months.

During that process, I spent the money that was in my trust account, which included the $900 flat fee payment you gave me to handle your divorce.

Ethically, I am not allowed to withdraw ANY of that money from my trust account until I have earned it and informed you. As you can see from my billing below, I did not bill out the entire $900, nor did I inform you of my withdraw[al] of any of that money. These are very serious violations of the Iowa attorney ethical rules.

You can find information on how to file an ethics complaint against an Iowa Attorney at www.iowacourts.gov. I have also enclosed a copy of the Attorney Complaint form with this letter. I have already self-reported these violations. But I encourage you to file an official complaint as well.

I will eventually make this right and refund your entire $900. However, I have had a difficult few months in which I have not been working and have had no income. In addition, there are other clients of mine that are in similar positions. It may be quite a while before I can make that right with everyone.

In the meantime, I have recently learned about "The Client[s'] Security Trust Fund" of Iowa. This fund provides for reimbursement by the legal profession for losses caused to the public in cases in which lawyers betray their client's trust and misappropriate funds.

Your particular case should qualify for reimbursement. If successful, this will get you a refund of your $900 much quicker than I will be able to provide it. I have enclosed a copy of the claim form should you choose to pursue reimbursement. I encourage you to do so. I will cooperate fully with the claims process. I know it would certainly help alleviate my cons[cience] regarding the situation.

Once again, I apologize profusely that I provided such poor lawyering services to you and that your life was adversely affected by my difficulties and behavior. If I don't hear from the Client Security Trust Fund regarding a pending claim, I will be in contact once I can start repayment of your refund.

To date, I have spent the following time on your case:

| DATE | TIME | DESCRIPTION |
|------|------|-------------|
| 3/14/18 | 0.8 | Meeting with Client |
| 3/14/18 | 0.1 | Text Message Exchange with Client |
| 3/14/18 | 0.1 | Text Message from Client |
| TOTAL | | 1.0 hours @ $250 an hour = $250 |

Best of luck to you in your future.

**C. This Proceeding.** On September 11, Earley's license was suspended for failing to comply with client security and continuing legal education requirements. Approximately two months later, on December 7, the Board filed a complaint against Earley alleging ethical violations arising out of Earley's representation of Patterson and Beltz. The complaint also alleged that Earley had "misappropriated or converted client funds without a colorable future claim to the funds." *See* Iowa Ct. R. 36.8(1).

Earley did not file an answer. On February 18, 2019, the matter proceeded to hearing before the commission. Beltz and Earley testified at the hearing. Beltz recounted hardship he had suffered because of Earley's failure to move forward in the representation:

Q. Due to the six-months delay, did you -- to your knowledge, did you lose any rights or motions that were filed by opposing counsel in the dissolution matter? A. I believe that we could have had a custody order already set in place. I haven't been allowed to see my son, but for maybe about ten

minutes in the last two and a half months. He's two years old and my world.

. . . .

Q. Are there any other issues with that dissolution that have been affected by the gap in time or the lack of representation in the six months between March 14th and September 28th of last year, that you are aware of? A. She almost took everything, because we're still legally joined and not legally separated, and I'm struggling hard.

Beltz also testified that he was now representing himself in his dissolution proceeding because he did not have the funds to hire a second attorney.

For his part, Earley admitted that he had "convert[ed] client funds without a colorable future claim." He admitted that he had also converted funds from clients other than Beltz and Patterson. Earley recounted that he had serious mental health issues, which culminated in an inpatient hospitalization in October 2018. He added, "I deserve disbarment. And if you went that route, I wouldn't blame you, and I would accept it. I don't know if I want to be an attorney or not."

Earley went on,

I would like to hope that someday I'll get better and be able to redeem myself. Anybody that knows me well knows that, like, I'm very big on growth, becoming a better person. I consider myself a moral person, and so I've -- as dark as it is right now, like, I do think eventually I'll come out of this a better person. But what I did was wrong; I don't deserve to be a lawyer, so I understand if you don't want me to be anymore.

Discussing his background, Earley explained that he had flunked out of college several times because he spent his twenties "basically partying." When he was twenty-nine and found out that he was going to have a son, Earley enrolled in college for the last time and did well. Earley went on to complete law school, but by then he was over $250,000 in debt and feeling significant financial pressure.

On April 19, the commission issued findings of fact and conclusions of law. The commission found that Earley had violated Iowa Rules of Professional Conduct 32:8.4(b) ("commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer"), 32:8.4(c) ("engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"), 32:1.3 (failing to act with reasonable diligence in representing a client), 32:1.15(a) (failing to keep client property separate), 32:1.15(c) (withdrawing funds that have not been earned), and 32:1.15(f) (failing to comply with trust account rules). The commission found as mitigating circumstances that Earley had been in his first year of practice, was suffering from mental health issues, and had admitted his wrongdoing and expressed remorse. It noted client harm as an aggravating factor. The commission further noted that Earley had not attempted to assert a colorable future claim defense. The commission recommended that Earley's license to practice law be revoked.

## II. Standard of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lynch*, 901 N.W.2d 501, 506 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Pederson*, 887 N.W.2d 387, 391 (Iowa 2016)); *see* Iowa Ct. R. 36.21(1). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Lynch*, 901 N.W.2d at 506 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 653 (Iowa 2017)).

When, as here, the attorney does not answer the Board's complaint, the alleged facts are deemed admitted. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 257 (Iowa 2012). However, we conduct

an independent review of the ethical violations. *Id.* We respectfully consider the commission's recommendations as to sanction, but we "have the discretion to 'impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018)).

### III. Rule Violations.

We agree with the commission that Earley violated numerous rules of professional conduct. He neglected the Beltz and Patterson matters. *See* Iowa R. Prof'l Conduct 32:1.3. He violated proper trust account practices by withdrawing unearned fees and not notifying his clients of the withdrawals. *See id.* r. 32:1.15(c), (f). Also, and most importantly, he misappropriated client funds in both matters, taking money for personal purposes to which he knew he was not entitled. *See id.* rs. 32:1.15(a), 32:8.4(b), (c); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moran*, 919 N.W.2d 754, 759 (Iowa 2018).[1]

When the Board charges misappropriation or conversion of client funds by an attorney, an attorney seeking to rely on a colorable future claim defense must raise that defense in his or her answer. *See* Iowa Ct. R. 36.8(2). Earley did not do so. To the contrary, he acknowledged at the hearing that he had no colorable future claim to the funds. The convincing preponderance of evidence shows that as Earley needed money between March 2018 and July 2018, he depleted his client trust account with the

---

[1]"[A] criminal conviction is not a prerequisite to finding a violation [of rule 32:8.4(b)]." *See Moran*, 919 N.W.2d at 759 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 116 (Iowa 2014)).

knowledge he was not going to be able to get work done on his clients' cases.

### IV. Discipline.

"There is no uniform sanction for a particular ethical violation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bauermeister*, 927 N.W.2d 170, 174 (Iowa 2019). Still, "[w]e seek to 'achieve consistency with prior cases when determining the proper sanction.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010)).

"[W]e have found revocation appropriate 'in nearly every case where an attorney converts client funds without a colorable claim.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 163 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500 (Iowa 2017)). The amount converted does not alter the sanction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 159–60 (Iowa 2018) (revoking the license of an attorney who converted $630 without a colorable future claim). Likewise, mitigating factors do not come into play. When an attorney converts client funds without a colorable future claim, "we need not consider mitigating and aggravating factors that may be present . . . ." *Guthrie*, 901 N.W.2d at 500. Accordingly, we agree with the commission that revocation is the appropriate sanction here.

This is an unfortunate case. Earley has had to deal with burdens of family dysfunction, mental illness, and six-figure student debt. Yet, as he acknowledged to the commission, he should not be practicing law. Beltz and Patterson, and apparently other clients, suffered unjustified harm when Earley took their retainers, did not do the work, and used the

12

retainers to pay his personal debts. The legal community as a whole also suffered unjustified harm. All attorneys are required to contribute to the Clients' Security Trust Fund, and the reputation of all attorneys takes a hit to some degree when any attorney misappropriates client funds.

**V. Disposition.**

We revoke Earley's license to practice law in the State of Iowa. Pursuant to our rules, Earley may apply for readmission after a period of at least five years. *See* Iowa Ct. R. 34.25(7). In the event of application for readmission, Earley must demonstrate that he is of good moral character and worthy of readmission to the bar. *See id.* r. 34.25(9). Earley must also pay all fees. *See id.* r. 34.25(9)(*d*).

**LICENSE REVOKED.**