# IN THE SUPREME COURT OF IOWA

No. 21–1068

Submitted February 23, 2022—Filed April 15, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**JOHN KARL FISCHER,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends revocation of the respondent's license to practice law based on violations of our attorney ethics rules. **LICENSE REVOKED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode, Crystal Rink (until withdrawal), and Alexis W. Grove, for appellee.

Eashaan Vajpeyi and Melissa Ament of Ball, Kirk & Holm PC, Waterloo, for appellant.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney John Fischer with violating rules of professional conduct. The charges included misappropriation and conversion of client funds. A panel of the Iowa Supreme Court Grievance Commission found Fischer violated multiple rules of professional conduct, including conversion of client funds, and recommended revocation of his license. The Board requests revocation. Fischer admits certain violations, denies stealing, and argues for a suspension instead of revocation. On our de novo review, we determine that Fischer converted client funds without a colorable future claim, among other violations, and we therefore revoke his license to practice law in the State of Iowa.

## I. Background Facts and Proceedings.

Fischer has been licensed to practice law in Iowa since 1979 and has been a solo practitioner in Vinton since 2014. He practices primarily in the areas of trusts and estates, probate, real estate, and tax. In 2012, Fischer received a private admonishment for improper collection of fees. In 2018, Fischer received a public reprimand for lack of diligence and failure to communicate with his clients. The Board's current complaint arises from Fischer's representation of several clients and audits of his trust account. Because we revoke his license for misappropriation, we truncate our discussion of the other matters. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Crum,* 861 N.W.2d 595, 604 (Iowa 2015) ("[T]here is ample evidence in the record to prove Crum misappropriated client funds.

Therefore, it is unnecessary for us to address Crum's other violations."). We find the following facts on our de novo review of the record.

**A. AlphaGen.** AlphaGen Materials Technology, Inc. is an Iowa corporation. Fischer is a minority owner who has served as a director since its incorporation in 2008 and also serves as its vice president, secretary, and treasurer as well as its attorney. In March of 2012, AlphaGen was sued for breach of contract. Fischer filed an answer for the defendant and remained its counsel of record. In the months that followed, AlphaGen repeatedly failed to comply with discovery requests and court orders. After judgment was entered against the defendant, the plaintiffs pursued debtor's examinations, and AlphaGen continued to disobey court orders. A settlement was negotiated, which included Fischer as a named party. When Fischer, AlphaGen, and AlphaGen's president failed to honor the settlement, the plaintiffs filed a second lawsuit to enforce the settlement and pierce the corporate veil. Fischer was named as a defendant in the second lawsuit.

The pattern continued with more violations of discovery obligations and court orders. The court found the defendants, including Fischer, willfully and in bad faith violated court orders and imposed sanctions that ultimately included a default judgment. Fischer blamed an unresponsive client but offered no valid excuse for his personal failure to comply with document requests for records within his control.

**B. Trust Account Audits.** Fischer was audited in 2010, 2015, and 2019. Each audit revealed Fischer and his staff failed to maintain proper records of his

client trust account. Some of his client trust accounts had negative balances. Fischer admits he did not maintain a separate account for each matter. He recognizes that he is responsible for supervising his staff and failed to "do an adequate job." Fischer admits he was "inept" and failed to prepare triple reconciliations from 2017 to 2019, contrary to his responses to annual client security commission questionnaires. The 2019 auditor concluded Fischer's client trust account was underfunded by $10,042. The client security commission's auditors testified they could not determine if Fischer used the funds for personal use because of the lack of records. Fischer promptly reimbursed the account in full. For at least six months after the 2019 audit, Fischer successfully balanced his trust account "to the penny."

**C. Osborn Matter.** Josh Osborn and his brother James Osborn own half-interests in RB Homes, Inc., which built spec homes. In 2011, high winds damaged the roof of a home they built and sold. The homebuyer's property insurer, Travelers Commercial Insurance Company, brought a subrogation action against the Osborn brothers and RB Homes. Fischer represented the defendants without a written fee agreement.

In May of 2014, the parties agreed to settle the lawsuit for $15,000. Each brother agreed to pay half of the settlement, or $7,500, and their share of the attorney fees. In September of 2014, Josh paid Fischer $9,200. Josh directed Fischer to pay $7,500 to Travelers for Josh's share of the settlement and to retain $1,700 as Josh's half of the attorney fees. Fischer did not send Travelers a check for $7,500. Instead, without informing Josh, Fischer used Josh's settlement

money to cover James's attorney fees and sent Travelers a check for only $6,198. Travelers never cashed that check, and Fischer ultimately withdrew and spent that amount himself.

Josh testified at the grievance commission hearing that Fischer never told him that his payment would be used to cover James's share of the attorney fees. Fischer argued Josh was responsible for the entire bill as president of RB Homes. But when Fischer testified, he admitted to misapplying the money because he "was mad":

> Q. So you don't dispute that Josh Osborn directed you to pay $7500 of that check to the opposing party, as they were settlement funds, correct?
>
> A. The 7500, yes.
>
> Q. And so you kept a portion of his settlement funds --
>
> A. As the --
>
> Q. -- for your own attorney fees?
>
> A. Yes, ma'am, as the fee for RB Homes, that's correct.
>
> Q. But you didn't have Josh's permission for that, right?
>
> A. No. No, I was mad.
>
> Q. And so you knew that that wasn't your money, right?
>
> A. I knew that it was not in accordance with what he had directed me to do. . . . . .
>
> . . . .
>
> [Q.] Did you have any agreement or contract in place with Josh Osborn that he would·be responsible for paying his brother's --
>
> [A.] No.
>
> [Q.] -- attorney's fees?

[A.] No, that was my fault, because I was un -- I was mad.

James's wife testified the parties never had an understanding that Josh would pay James's share. She testified she paid James's part of the settlement and attorney fees in cash. Fischer denies receiving full payment from James's wife for the Osborn matter. The commission did not find her testimony credible.

In May of 2016, Travelers filed a motion to enforce the settlement. Fischer personally appeared on July 22 at a hearing on the motion. The district court granted the motion and ordered the defendants to pay $15,000 before August 31. Fischer also did not oppose Travelers' request for final judgment. Fischer did not inform his clients of the motion, hearing, or judgment. Nearly four years later, in early 2020, James sold his home and was surprised to learn of the judgment lien against his property for the $15,000 judgment plus interest and fees. James paid the $17,990 balance at closing: $2,990 more than the original settlement amount.

When Josh confronted Fischer about the judgment, Fischer repaid Josh the $6,198 in several installments. In his letter to Josh enclosed with the last installment check, Fischer wrote: "This final installment constitutes the full payment of the insurance check misplaced or allegedly uncashed by the insurance company sometime between 2014 and 2019. Sorry for any time delay – still have not received any photocopy of 'uncashed' check." An attorney for Travelers testified at the grievance commission hearing that his office shredded the check and it was never cashed. Fischer testified that he did not resist the entry of judgment for $15,000 because the fact Travelers had not cashed the

check was "evidently" told to him. But "[w]hether [he] was mindful of that is a different subject." Fischer never repaid Josh for the $1,302 he used to cover James's attorney fees.

The Osborn matter was not included in the records reviewed by the auditor in 2019. Thus, Fischer's client trust account was underfunded by over $16,000. Fischer testified he has no colorable future claim to the $7,500, which includes the $6,198 for the uncashed check to Travelers and the $1,302 he used to cover James's attorney fees. Fischer acknowledged: "That was [Josh's] money, because [Travelers] didn't cash the check. I have no colorable claim, but I did not intentionally convert that to my own use." Fisher admitted to "taking over $6,000 out from [his] trust account that rightfully belonged to Josh Osborn."

**D. Disciplinary Proceedings.** The Board filed a complaint against Fischer on June 5, 2020. The Board amended the complaint on September 23 to include the Osborn matter. Fischer admitted most of the factual allegations. The Board alleged that Fischer's conduct in the AlphaGen matter violated Iowa Rules of Professional Conduct 32:3.2 (duty to expedite litigation), 32:3.4(c) (disobeying rules of tribunal), 32:3.4(d) (frivolous positions on discovery), and 32:8.4(d) (conduct prejudicial to the administration of justice); his conduct managing his trust account violated rules 32:1.15(a), 32:1.15(c), 32:1.15(f), 32:5.3(a), 32:5.3(b), 32:5.3(c)(2), and 32:8.4(c), and Client Trust Account Rules 45.2(3)(*a*)(9), and 45.7(3); and his conduct in the Osborn matter violated Iowa Rules of Professional Conduct 32:1.4(a)(3) (duty to keep client reasonably informed), 32:1.15(c) (withdrawal of unearned fees), 32:8.4(b) (criminal act

reflecting on lawyer's honesty, trustworthiness, or fitness), and 32:8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation). Pursuant to Iowa Court Rule 36.8(1), the Board's amended complaint specifically alleged Fischer "misappropriated or converted client funds for personal use without a colorable future claim to the funds," and notified Fischer that if conversion is proven, his law license could be revoked, and that to avoid revocation the burden is on Fischer to come forward with evidence to establish his colorable future claim to the funds missing from his trust account.

In April of 2021, the grievance commission conducted its evidentiary hearing. For the AlphaGen matter, Fischer argued he did not violate rule 32:8.4(d) but conceded he violated the other rules as charged. For the trust account audit, Fischer did not contest any of the alleged rule violations. For the Osborn matter, Fisher did not contest that he violated rule 32:1.4(a)(3) but argued he did not violate rules 32:1.15(c), 32:8.4(b), and 32:84(c). He argued he did not intentionally disobey court orders in the AlphaGen matter and that he had a colorable future claim in the Osborn matter. On August 2, the commission found Fischer violated the rules as alleged by the Board and recommended Fischer's law license be revoked. Fischer timely appealed.

In his appeal, Fischer generally accepts the commission's findings of fact. Fischer argues the commission erred in concluding his conduct in the AlphaGen matter violated rule 32:8.4(d), his conduct in the Osborn matter violated rule 32:1.15(c), and in recommending revocation. Fischer denies he misappropriated client funds and argues he had a colorable future claim to said funds. He

requests a suspension in lieu of revocation. The Board urges us to "conclude that Fischer converted client funds without a colorable future claim" and "revoke his license to practice law."

**II. Standard of Review.**

"We review factual findings of the commission de novo." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Widdison*, 960 N.W.2d 79, 86 (Iowa 2021); *see also* Iowa Ct. R. 36.21(1). "We give respectful consideration to commission findings, especially when considering credibility of witnesses, but are not bound by them." *Widdison*, 960 N.W.2d at 87 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 953 N.W.2d 126, 142 (Iowa 2021)). "[We] may impose a lesser or greater sanction than the discipline the grievance commission recommends." Iowa Ct. R. 36.21(1); *see also Widdison*, 960 N.W.2d at 87.

"The Board must prove ethical violations by a convincing preponderance of the evidence." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kozlik*, 943 N.W.2d 589, 594 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018)). "A convincing preponderance of the evidence lies between the preponderance-of-the-evidence standard in a civil case and the reasonable-doubt standard in a criminal case." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noyes*, 936 N.W.2d 440, 442 (Iowa 2019)).

If we conclude an attorney violated a disciplinary rule, we determine the appropriate sanction by considering "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law."

*Id.* at 595 (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 367–68 (Iowa 2013)).

**III. Analysis.**

We begin our review with the Osborn matter. We conclude Fischer misappropriated $7,500 of Josh's money that he intended to be used as a settlement payment and that Fischer had no colorable future claim to those funds. "Because this determination warrants revocation of his license, it is unnecessary to discuss his other violations in detail." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moran*, 919 N.W.2d 754, 759 (Iowa 2018).

Under our professional rules, "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa R. Prof'l Conduct 32:1.15(c). Additionally, "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." *Id.* r. 32:8.4(b). In Iowa, theft occurs when

> [a] person . . . [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control . . . by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, . . . or appropriates such property to the person's own use, when the owner of such property is known to the person.

Iowa Code § 714.1(2) (2017). "[A] lawyer who commits a theft of funds engages in conduct involving moral turpitude, dishonesty, and conduct that adversely reflects on the lawyer's fitness to practice law." *Kozlik*, 943 N.W.2d at 595

(quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Den Beste*, 933 N.W.2d 251, 254 (Iowa 2019)). A criminal charge or conviction is not required. *See, e.g., id.*

It is also "professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). The Board must demonstrate that " 'the attorney acted with some level of scienter greater than negligence' or incompetence." *Kozlik*, 943 N.W.2d at 595 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 221 (Iowa 2015)). "Scienter is satisfied where an attorney acted knowingly, intentionally, or with the aim to mislead." *Id.* And "[a]n attorney's 'casual, reckless disregard for the truth' also establishes sufficient scienter to support a violation of the rule." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656 (Iowa 2013)). We have held that misappropriation of client funds violates both rule 32:8.4(b) and 32:8.4(c). *See, e.g., Kozlik*, 943 N.W.2d at 596.

When determining whether a lawyer has misappropriated client funds, "we have concluded the lack of any relationship between withdrawals and fees disproved the attorney's claim the withdrawals were related to the fees." *Id.* at 597. "A person's intent may be inferred from the circumstances." *Id.* We recognize that attorneys have specialized knowledge. *Id.*

> [T]he law takes account of a lawyer's legal training and experience in assessing his or her state of mind. A lawyer is an adult, a man or woman of the world, not a child. He or she is also better educated than most people, more sophisticated and more sharply sensitized to the legal implications of a situation. The law will make inferences as to a lawyer's knowledge with those considerations in mind.

*Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 139 (Iowa 2009)).

In *Iowa Supreme Court Attorney Disciplinary Board v. Kozlik*, an attorney served as an administrator of his uncle's estate. 943 N.W.2d at 591. The attorney began writing checks to himself, "two or three of the checks were deposited into his personal checking account and the remainder into his operating account at his law firm." *Id.* at 592. The attorney admitted he wrote the checks but claimed "he did not know he needed a prior court order when he made the payments" and "promised to repay all of the unauthorized payments with interest." *Id.* at 593. The attorney "denied he had committed the ethical violations charged" because the board did not prove he "had a mental intent to steal" and, in fact, he "never had an intent to steal." *Id.* at 594. We concluded the board proved by a convincing preponderance of the evidence that the attorney violated both rule 32:8.4(b) and 32:8.4(c). *Id.* at 595. We did not find the attorney's testimony credible because his allegedly earned fees did not match the checks and his nearly twenty years as an Iowa estate attorney should have given him the necessary knowledge of our basic statutory requirements. *Id.* at 596–97; *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019) (concluding Muhammad committed an intentional act and explaining "[i]t could well be, of course, that Muhammad did not realize the ethical implications of her conduct. Theft by misappropriation, however, is a general intent crime.").

Similarly, Fischer argues he lacked the requisite intent to misappropriate the $7,500 from Josh. We are not persuaded. Fischer has not provided a justification for taking the $7,500. Instead, he admits he did not have the authorization to use the $7,500 for anything besides payment toward the agreed

settlement. Fischer is a seasoned attorney who should have at least looked into the status of the $6,198 check when Travelers moved for enforcement of the full $15,000 judgment. Also, he should not have taken the $1,302 from Josh towards his brother's fees because he was "mad" and without approval from his client. Fischer's arguments that his actions were unintentional and just due to poor record-keeping do not square with the facts. Fischer did not inform his clients of Travelers' motion to enforce the judgment, the hearing, and the judgment against them for over three years. Fischer did not and has not reimbursed Josh for the $1,302 used to cover James's attorney fees. Thus, we conclude Fischer misappropriated $7,500 of settlement funds he received from Josh Osborn.

**IV. Sanction.**

The commission and Board recommend revocation. "There is no place in our profession for attorneys who convert funds entrusted to them." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500 (Iowa 2017) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 117 (Iowa 2014)). Normally, "[m]isappropriation of funds held in trust 'results in revocation, except in instances in which the attorney had a colorable future claim to the funds or did not take the funds for personal use.' " *Kozlik*, 943 N.W.2d at 598 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232 (Iowa 2014)). "When an attorney converts funds without a colorable future claim, 'we need not consider mitigating and aggravating factors that may be present.' " *Id.* at 600

(quoting *Guthrie*, 901 N.W.2d at 500). Under the colorable future claim defense,[1] "[a]n attorney in a disciplinary proceeding bears the burden of coming forward with evidence of a colorable future claim, but the burden to prove conversion remains with the Board." *Id.* at 598 (quoting *Carter*, 847 N.W.2d at 232–33).

In *Iowa Supreme Court Attorney Disciplinary Board v. Widdison*, an audit revealed "a difference between the client account balances and the check register balance of $2899.01" and seven stale client accounts. 960 N.W.2d at 95. We concluded the attorney violated our ethical rules because he "failed to return unused client funds for over one year after the matters were closed." *Id.* However, we did not believe his "actions demonstrated an intent to enrich himself or to harm his clients nor do we find that he engaged in intentional misconduct related to the stale client accounts." *Id.* Technical violations "of the client trust account rules carry a lesser sanction than conversion of client funds." *Id.* at 96. Because his "violations of the client trust account rules were minor, unintentional, and did not create client harm," we did not revoke his license. *Id.* at 96, 98. *But see Kozlik*, 943 N.W.2d at 598, 600 (revoking the attorney's license to practice law because it was implausible for him to have a colorable claim of almost $30,000 of fees when the estate capped fees at just over $9,000 and his "unauthorized

---

[1]In *Iowa Supreme Court Attorney Disciplinary Board v. Parrish*, we determined that "when a lawyer takes client funds provided for a special purpose, the future claim of right defense is inapplicable." 925 N.W.2d 163, 179 (Iowa 2019). Although the colorable claim defense is no longer available when an attorney misappropriates client funds designated for a specific purpose, such as a settlement payment, *Parrish* was decided after Fischer had misappropriated the settlement funds. In any event, Fischer failed to show he had a colorable future claim to the $7,500 he converted.

payments to himself did not at all correlate to the fees he allegedly earned or the expenses he allegedly incurred").

Unlike the unintentional math errors in *Widdison*, Fischer intentionally converted $1,302 within days of receiving payment from Josh because he "was mad." He later converted $6,198 when he knew Travelers never cashed the check for that amount. Fischer for over three years intentionally refrained from informing his clients about Travelers' motion to enforce the settlement and resulting judgment. Fischer's misappropriation caused additional client harm: James had to pay $2,990 more for the settlement and Josh paid more than his share of legal fees. Fischer had no justification to use the $7,500 for anything other than payment on the settlement agreement. And throughout the disciplinary process Fischer was unable to identify a legitimate reason to justify his admitted withdrawal of the $6,198. We conclude the Board has demonstrated by a convincing preponderance of the evidence that Fischer's misappropriation was an intentional act of theft, not a technical violation, and revocation is the appropriate sanction.

**V. Disposition.**

We revoke Fischer's license to practice law in the State of Iowa. All costs of this proceeding are assessed against him. Iowa Ct. R. 36.24(1). He must comply with the notification and other requirements of Iowa Court Rule 34.24(1). Under our rules, Fischer "may apply for readmission after a period of at least five years." *Kozlik*, 943 N.W.2d at 600; *see* Iowa Ct. R. 34.25(7). To be readmitted,

Fischer must show he is "of good moral character" and "worthy of readmission to the bar." Iowa Ct. R. 34.25(9).

**LICENSE REVOKED.**